Judge Underwood
delivered the opinion of the Court.
C. Greenup held 145 acres of land, granted to him by the commonwealth of Virginia in May, 1786. In 1815, he conveyed this tract to West, the lessor of the plaintiff. A tract of 546 acres, was patented to Robert Todd, in 1786, calling for, and binding on two lines of Greenup’s survey.
In 1798, Todd conveyed his tract of 546 acres, to Samuel Price, ancestor of the defendants. According to the patents and deeds, there is no confliction between the two claim?. As early as 1803, Greenup was possessed of his tract, and he, and those, claiming under him, have bebn possessed ever since, except so far as they may have been disseised by Samuel Price;, or those dairying under hirp.
*381 In February or March, 1804, Samuel price rented his tract, or part of it, to dames Haydon, who enter** ed upon the land, claiming under Price. The stated, that about the time Haydon entered, he told the witness that he was to clear ten acres of land for rent, according to the contract with Price; and some time afterwards Haydon showed the witness, demark-ed by blazes on the trees, the ten acres, which he represented he was to "tear. The ten acres, thus de-marked and pointed o'„., ran across the line, separating the lands patented as aforesaid; and included land embraced by Greenup’s patent, and not embraced by Todd’s. Haydon cleared a turnip patch within the ten acres, the season after his contract with Price, and got fire wood within the bounds of the ten acres, immediately after he removed to the land. The turnip patch was cleared, sowed in turnips, and enclosed in 1804; but the precise time, the .witness could not state. The usual season for sowing turnips, according to the witness, was from the 15th. July, to the 1st. of August.
The declaration in ejectment, was served 14th-June, 1824. A part of the turnip patch which was cleared, and enclosed, extended across the line, common to the patents, into Greenup’s survey; and in the winter following of 1804-5, an additional clearing was made, and annexed, to the turnip patch, making in all, about two acres of cleared land, in and upon Greenup’s survey, which has been held and possessed by Price, and those claiming under him, by actual enclosure, by fencing, according to our understanding of the evidence, uninterruptedly, to the present time. How much more, the demarkation of the ten acres, by blazing the trees, includes, we know not. West, Greenup’s vendee, as lessor, instituted his action of ejectment, to recover the land held by the tenant of Price’s heirs, lying on West’s side of the patent line. They defended, relying on the statute of limitations, and succeeded. West brings the case to this court for revision.
The first error relied on, is, that there was no plea, and the jury were erroneously sworn to try the issue. This assignment is not warranted by the facts exhib *382 ited of record. Price’s heirs were admitted defendants, on the 21st. October, 1824; made confession of the lease, entry, and ouster, in the declaration supposed, and plead not guilty. On the 25th. October, 1824,on the motion of the plaintiff, the order, admitting Price’s heirs as defendants, was set aside and judgment rendered against the causal ejector, because Martin Sheets, the tenant in possession, upon whom the declaration and common order were served, failed to enter himself defendant. A writ of habere facias possessionem, was also awarded upon the judgment. Then the heirs of Price were admitted defendants; and the execution of the writ of possession stayed until the determination of the cause. It is true, that it does not appear that they plead^a.fter this; but as the plea was already in, and was not with, drawn at the time the order was rescinded, which first admitted them as defendants, we perceive no mischief likely to result from regarding the plea then put in, as that which formed the issue, to try which the jury were sworn. It may seem inconsistent to regard pleas put in before defendants are made; but to reverse on that ground, in this case, or in any case like it, would be a niceity, well calculated to frustrate the speedy administration of justice. If, therefore, the plaintiff in error, has no better grounds to stand on, he must abide the verdict and judgment against him.
After the evidence was concluded, which presented the facts already detailed, the plaintiff moved the court to instruct the jury, “that if they believed Greenup was possessed of the land, embraced in the grant to him, and his deed to the lessor of the plaintiff, in the years 1803 and 1804, and since, as stated by the witnesses, the statute of limitation did not protect the defendants, beyond the extent of the ground, actually enclosed in the turnip patch, twenty years prior to the commencement of this suit; and even if they believed the turnip patch was cleared that early, that the statute of limitation did not bar the plaintiff to the limits of -the ten acres, blazed around, as stated b)f the witness.” The court refused to give this instruction; and on the application of the defendants, gave the following, “that the defendants were pro *383 tected by the statute of limitations; and the plaintiff’s action whs barred to the full extent of the said ten acres, demarked to be cleared, by said Haydon, stated by the witness, if the jury believe the turnip patch was cleared twenty years before the commencement of this suit; and any part of it, however small, was within the plaintiff’s boundary; and that it was the intention of said Haydon, to take possession of the whole ten acres.”
Declarations °/ actor, at ¿*“‘4 plaining qua ammo, are evidence1*!!®1 part of res gestae, to o1fe¡^tnaturé Declarations of tenant, wbí,e iD P02' competent evideneo, as Part oires fhewiat re o/hTsTenan-oy; whether he claimed in or8inWthatht of another, as tenant for hokjrS&c/reC" If landlord authorize ten-no certwlf1 traot of land, and he enter 3uch entlaDlí’ does not to-vest landlord with posses-Centered on 6y tenant, without au-ihority.
*383 The plaintiff excepted to the opinion of the court, in giving the instruction asked for by the defendants, and in refusing to give the instruction asked for by him. The plaintiff objected on the trial, to the testimony of a witness, detailing the statements made by James Haydon, relative to the contract he had entered into with Samuel Price; and also detailing what said Haydon told the witness about the demarcation of the ten acres, by blazing the trees around it. The court overruled .the objections, and permited the witness to state what Haydon had said, relative to these points, to which the plaintiff excepted. Whether the court was right or wrong, in refusing and giving the instruction as aforesaid, and in admitting the testimony objected to, as evidence before the jury, constitute the important and remaining questions to be disposed of. As instructions are predicated upon the evidence, the admissibility of the testimony objected to, will be first considered.
To legitimate the Statements made by Haydon,- to the witness, and to rid them of the character of mere hearsay, they must be considered as part of the res ge$l&; and if they cannot be so considered, they ought to have been rejected. Conversations, or -dec-Jarations, made by the actor or party concerned, at the time an act is done, and which explain the quo animo and design of the performance, may, whenever the nature of the act is called in question, be givén in evidence, as part of the res gestea. Without tolerating this explanation of the acts of men, by receiving their accompanying declarations, we should be often misled as to their true nature and character; and consequently,liable to fall into errors, in respect to them. The rule requiring resgestm declarations to *384 bo received as evidence, is a necessary, and very useful one; but in the present case, we think it will not sanction the reception of the testimony objected ^0"' Hay^on» as an occupant or tenant of the land; might, during his actual occupancy, make declarations which ought to be received, whenever offered, in evi¿ence, to shew the nature and character of his ten-ancy5 whether as claimantin his own right, or right of another; whether as tenant of the freehold, or for years; whether adversely to a particular claim, or noL ^e case May’s heirs vs. Jones, is an’au* ihority in point. In cases like these, the occupancy 0r tenancy, is the act; the declarations; to explain its nature an^ extent, made by the tenant, while in possession, are the res gestm. Hay don’s declarations, while occupying the land, were very proper to shew ^lat u,u*er Price, and that his possession was as tenant to Price; but Haydon’s statements were not confined to this. They have been unwarrantably extended. His mere declaration to the witness was received as evidence of what the contract was bet'ween him and Price. By shewing the blazes on the trees, to the witness, and by declaring that they in-eluded the ten acres he, Haydon, was to clear, his statement, without oath, established a contract between him and Price, in relation to these identical ten acres; and thereby, Price, by his tenant, Playdon, is made the adverse possessor, by construction, of another’s land, to the extent of the blazed demarkation. The contract between Haydon and Price is one thing, the occupancy of the land by Haydon,is another; and the declarations of Haydon in relation to the nature of his possession, as res gestó, still another. It was improper to admit proof of the first, upder the idea of res gestee,by receiving as evidence, what Haydon had been heard to say, as it would have been to have received the hearsay of Haydon, to prove that Greenup, in 1804, had actually conveyed the land in controversy, to Price. It does not appear that Haydon was dead, or out of the state. He would have been a competent witness; and his evidence might have put a very different face on the controversy, from that on which the instructions seem to be predicated. It does not appear who marked out the ten acres, which Haydon *385 said hehad agreed to clear/or rent. ¿It doe's not appear that Price gave any thing more than leave to Haydon to take possession of lands which were his, Price’s, and to clear ten acres thereof. If Haydon, through mistake, as to the boundary of Price’s land, laid off the ten acres, by blazes on trees, for the purpose of clearing it under his contract; if Price had nothing to do with the demarkation, and Haydon, in discovering his mistake, abandoned the clearing, and yet retained the use and possession of that which he had previously cleared, we cannot, upon any plausible principle, extend the seisin and possesson of Price, to the limits of the ten acres.
If a man enters on land, claiming to the extént of a marked boundary, he will be adjudged to be in possession to the full extent of the boundary. But if a man give authority to a tenant to take possession of a certain close or tract of land, and the tenant enters on other lands, not embraced by the authority, such entry cannot invest possession of the land entered upon; in the person, granting the authority. In reference to such an entry on land, there is no con-nexion between landlord and tenant. The power given, is disengaged; the entry; therefore, is merely the tortious act of the tenant.
If, therefore, he abandons the possession, and yields it up to him, from whom he received it, and the real owner of pari, takes possession, the parties acting under the belief that the tenant had restored that which he received, and the landlord owned, and no more, we cannot admit that the person really owning a part only, gains an adverse possession of the lands, not owned; relating back to the date of the tortious entry thereon, by the tenant. In such a case, the tenant makes no sale, and the landlord is not, and never was, responsible for the tenant’s trespass, and tortious entry, on the lands of another. If, in such a case, after the tenant has abandoned the possession, with a view to restore to the landlord, what he had received from him, the landlord entered, and took possession, not only of his own land, but land tortiously entered upon, and improved by the tenant, without authority from the landlord, it seems to us, that it should be re *386 garded as fNjiev,7''f resspas\,y nd wrong on the part of? Hndlbrd ji having no connexion with, or relation to, the wrongful acts of the tenant. In such a case,’ the statute of limitations should commence running from the date of the landlord’s own entry, and possession of lands across his line, instead of from the date of the tortious, unauthorized entry and possession of the tenant. Haydon, in the present case, was never a tenant to Price, in any lands, upon Greenup’s survey, unless his tenancy can be established by aa inference to be drawn from Haydon’s statements, that Price leased him the land. Haydon’s statements, proved by another, were incompetent to prove such lease. Haydon’s declarations, during his occupancy, that he held as tenant to Price, although legitimate, as a part of the res gestee, to show the nature of his possession, cannot entitle Price or his heirs, to the benefit of that possession, unless they had shown by competent proof, that Haydon took possession of the identical land, under a contract with Price, for the same land; and that Haydon’s entry was influenced, and procured by Price for his benefit. The evidence negatives, rather than sanctions, the idea that Price induced Haydon to enter upon any part of Greenup’s land. There is certainly, no evidence to warrant the conclusion, that the ten acres, marked out by blazed trees, was claimed by Price, more than twenty years before the commencement of the suit, if the testimony, as to Haydon’s statement, that these were the tea acres he was to clear, under his contract with Price, should be excluded.
We are of opinion that the court erred in not excluding it. If there was no evidence that Price claimed the land 20 years before suit brought, evidence that Haydon said he held it as tenant to Price, without proving the contract by which the tenancy was created, cannot confer any right on Price or his heirs. Had there been evidence that Price set up claim to the whole demarked ten acres, 20 years before suit brought, and that Haydon held possession thereof, as Price’s tenant, these facts might have justified the inference that Haydon entered, in pursuance of authority from Price, and that his possession was Price’s, so as to support the running of the stat- *387 «te, from the date of Haydon’s entry. But to give the same effect to the mere statements of Haydon, which have been proved, when it does not that Price asserted any claim to the land in Greenup’s survey, when Haydon began clearing the turnip patch, would, in our opinion, be going unwarrantable lengths to lay a foundation for the statute of limitations to rest upon.
From the foregoing view of (he subject, it Is clear that the court erred in the instruction given to the jury, on the application of the defendant’s counsel. It does not follow, as the court supposed, that the jury should have found for the defendants, if they did believe, from the evidence, that the turnip patch was cleared 20 years before the commencement of the suit, and a part of it extended over into Green-up’s survey, and also believed that it was Haydon’s intention to take possession of the whole ten acres, as demarked. Haydon’s intention, unconnected with a claim to the tenacres, on the part of Price,.could not, as already explained, confer a right on Price or his heirs. The instruction given was erroneous and well calculated to mislead the jury.
The instruction asked for by the plaintiff ought to .have been given. It does not go as far as we think it might have gone, with propriety; but it should not have been rejected because it is less favorable to the plaintiff than it might have been. According to the evidence, Greenup was actually possessed, in contemplation of law, to the extent of his patent boundary, in 1803, in virtue of entering upon, improving and enclosing a part of his tract. It is contended that Haydon disseised him to the full extent of the ten acres, which were blazed around, lying on Green-up’s side of the line, common to both patents, because of clearing a part and puting it in turnips, claiming to the blazed boundary. It is well settled, that where two patents conflict, and the junior patentee enters within the lap and takes possession, he is coq-sidered as possessed to the extent of the boundary of his patent. In such case, his possession is. not limited to his actual enclosure. He has a colorable authprity for entering. He has a claim derived from *388 the records of the country. The adjudications of this court, extending his possession to the limits of his claim, are too numerous to be overturned, in behalf pf the elder patentee in possession of his tract, out side the lap, previous to the entry made by the junior patentee. But we are not disposed to make the demarcation of the ten acres, by Haydon, or some one else, and his possession, by enclosing a part as analogous to the marked boundary of the junior patentee, made by the surveyor, under authority of law, and his entry within the interference. The entry upon Greenup’s land was without color of title. If the defendants were protected at all, by the statute of limitations, the protection did not extend beyond the quantity of ground actually cleared, enclosed and adversely occupied, 20 years before the suit was brought, according to the evidence in this record.
Monroe, for plaintiff; Marshall, for defendants.
The judgment of the circuit court is set aside and reversed, and the cause remanded for a new trial, iq conformity to this opinion.
The plaintiff must recover his costs.